UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| QUAM CONSTRUCTION CO., INC., A MINNESOTA CORPORATION | CIV 13-1017 |
| Plaintiff, | |
| | ORDER |
| -vs- | |
| CITY OF REDFIELD, A SOUTH DAKOTA MUNICIPALITY | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## BACKGROUND

Quam Construction Co., Inc., ("Quam") is a Minnesota corporation that entered into a construction contract with the City of Redfield, ("City") a South Dakota municipality. The construction contract was known as Shar-Winn Estates Storm & Sewer Sanitary Sewer Improvements. It involved, among other activities, the installation of pipes at the job site. Conditions encountered by Quam at the job site during the attempted installation of pipe led Quam to accuse the City of failing to disclose certain conditions. A dispute regarding the completion of this phase or portion of the construction contract resulted in a temporary halt in the project and thus began this action.

The dispute began as a disagreement regarding the subsurface soil conditions necessary to install pipe. The parties argued over who was responsible for correcting subsurface soil conditions to render the site ready for the work to begin properly and safely.

The general conditions of the performance guarantee in the construction contract cited in paragraph 19 provided that Quam, as contractor, and any sureties under the

performance bond, "guarantee to complete the project as specified and agree that loss of any occurrence, including acts of God, shall not relieve them of their obligation." Additionally, paragraph 15 of the contract provided as follows:

> 15. NATURE AND LOCATION OF WORK
> It is understood and agreed that Contractor has, by careful examination, satisfied himself as to the nature and location of the work, the confirmation of the ground, the character of equipment and facilities needed preliminary to and during the execution of the work, the general and local conditions, and all other matters which can in any way affect the work under this contract.

Neither Quam nor the City could agree about Quam's obligations after it was determined that the ground conditions were unsuitable to safely and correctly install the pipe. Pursuant to the construction contract between the parties, specifically Paragraph 26 of that contract, Quam and the City sought to resolve the dispute through mediation. Paragraph 26(a) of the General Conditions to the Contract provides that "[a]ny controversy or claim arising out of or related to the contract, or the breach thereof, shall first be submitted to the American Arbitration Association Mediation Department. A mutually agreed upon qualified alternative dispute organization may be used." Doc. 6, Exhibit A, Paragraph 26(a).

Following the protocol laid out in the contract, two full-day sessions of mediation were attempted in Sioux Falls, SD, but the mediation failed to satisfy the two parties. Quam then served the City with a demand for arbitration on July 25, 2013. The City has refused to participate in arbitration. Quam is now requesting this Court to compel the City to arbitrate.

## OPINION

The dispute resolution provisions of the contract between Quam and the City are set forth in Paragraph 26 of the General Conditions of the contract. The provisions state the following:

2

> a. Any controversy of claim arising out of or related to the contract, or breach thereof, shall first be submitted to the American Arbitration Association Mediation Department. A mutually agreed upon qualified alternative dispute organization may be used.
>
> Mediation shall continue (1) until resolution of the dispute or (2) until the mediator notifies the parties that it is unlikely that the dispute will be resolved through mediation.
>
> Arbitration: If the dispute is not resolved through mediation, the parties *may submit the controversy or claim to Arbitration. If the parties agree to arbitration*, the following will apply. (Italics added).

Under 9 U.S.C. § 4, the failure to arbitrate is addressed. That section states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing such arbitration proceed in the manner provided for in such agreement.

Under the Federal Arbitration Act ("FAA"), a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Industries, Inc., v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004).

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or likewise defense to arbitrability." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).

There is nothing in the language of the contract to create a valid agreement to arbitrate. The FAA clearly states that the language of the contract shall prevail over the

3

statute. Therefore, allowing either party the option of agreeing to arbitration rather than mandating such a procedure when mediation fails denies Quam the option of compelling arbitration.

Through the FAA, Congress established a strong federal policy favoring arbitration, requiring that the courts "rigorously enforce agreements to arbitrate," Shearson/American Exp., Inc. V. McMahon, 482 U.S. 220, 226 (1987) (quotation omitted). "By its terms, the FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Pro Tech Industries, Inc., v. URS Corp. 377 F.3d 868, 871 (*quoting* Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

In this case, no agreement to arbitrate was made. The words of the contract's arbitration clause allow for one or the other party to simply disagree and not allow arbitration to proceed. "[A] party who has not agreed to arbitrate a dispute cannot be forced to do so." Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943 (8th Cir. 2001) (*quoting* AT&T Techs. v. Communs. Workers of Am., 457 U.S. 643 at 648.)

IT IS ORDERED that petitioner's motion to compel arbitration, Doc. 4, is denied.

Dated this 19th day of December, 2013.

BY THE COURT:

*Charles B. Kornmann*

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Barbara J. Paepke*
　　　　　　　DEPUTY
(SEAL)

4